**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **S.J., (a pseudonym)** | : |
| | : |
| **Plaintiff,** | : |
| | : CIVIL ACTION NO.   2:24-cv-05477 |
| | : |
| **v.** | : |
| | : JURY TRIAL DEMANDED |
| **DELAWARE COUNTY, MARK A.** | : |
| **MURRAY**, in his individual and official | : |
| capacity, **DELAWARE COUNTY** | : |
| **JUVENILE DETENTION CENTER,** | : |
| **TERESA D. MILLER, FORMER** | : |
| **SECRETARY OF PENNSYLVANIA** | : |
| **DEPARTMENT OF HUMAN** | : |
| **SERVICES,** in her individual capacity, | : |
| **THEODORE DALLAS, FORMER** | : |
| **SECRETARY OF THE DEPARTMENT** | : |
| **OF HUMAN SERVICES,** in his individual | : |
| capacity, **CATHY UTZ, FORMER** | : |
| **DEPUTY SECRETARY FOR THE** | : |
| **OFFICE OF CHILDREN, YOUTH AND** | : |
| **FAMILIES,** in her individual capacity, | : |
| **CHILD GUIDANCE RESOURCE** | : |
| **CENTER, JOHN DOES 1-100 and ABC** | : |
| **ENTITIES 1-10,** | : |
| | : |
| **Defendants.** | : |

## COMPLAINT – CIVIL ACTION

### *Introduction*

1.      For decades, there has been an epidemic of child abuse, sexual assaults and/or rape

occurring in juvenile disciplinary institutions around the country. This abuse has been perpetuated

by administrators, counselors, guards, and peers alike. The emotional, physical and sexual abuse

and neglect of minors has become engrained in these institutions, as they continuously choose to enable the abuse of children by turning a blind eye for callous economic benefit.[1]

2.      Juvenile disciplinary institutions, established to care for, supervise, protect and rehabilitate children who have committed delinquent acts or have been deemed dependent, have now turned into an open arena for child abuse and neglect. No matter the circumstance, children who enter these facilities should not be subjected to any form of abuse. Despite this, abuses routinely take place. Further, it is well known that reported abuse still only represent a fraction of the actual abuses that occur as many incidents go unreported, even in cases where the abuse is known and/or suspected to have occurred.[2]

3.      The purpose of juvenile disciplinary institutions is not to punish, but to provide children with the appropriate care, supervision, and rehabilitation. Under Pennsylvania's Juvenile Act, disciplinary facilities such as the Delaware County Juvenile Detention Center (hereinafter "DCJDC") are obligated "[t]o provide for care, protection, safety and wholesome mental physical development of children."[3] Unfortunately, for the boys and girls who were committed to the DCJDC, nothing could have been further from the truth.

4.      For decades at DCJDC, a culture of abuse not only festered, but was perpetrated by staff and perpetuated by those at every level within DCJDC, through repeated cover ups. From

---

[1] *See* Richard A. Mendel, *Maltreatment of Youth in U.C. Juvenile Corrections Facilities*, Annie E. Casey Found. 3 (2015), http://www.aecf.org/m/resourcedoc/ aecfmaltreatmentyouthuscorrections-2015.pdf (addressed a study conducted by the Federal Bureau of Justice Statistics which revealed a continuing national epidemic of sexual abuse within State-funded juvenile facilities with about 10% of children within these facilities are sexual assault victims.); *See also* Clifton Adcock, *Most Juvenile Facilities Don't Comply with U.S. Rape Prevention Standards*, Okla. Watch (Feb. 25, 2016), http://oklahomawatch. org/2016/02/25/most-juvenile-facilities-dont-comply-with-u-s-rape-prevention-law/.
[2] *Id.*; *See also* Joaquin Sapien, *Report Cities Failure to Act Against Abusers of Juveniles in Detention*, ProPublica (Feb. 3, 2016), https://www.propublica.org/article/report-citesfailure-to-act-against-abusers-of-juveniles-in-detention
[3] 42 Pa.C.S. §6301(b)(1.1)

guards to supervisors to counselors to superiors of every level, various and heinous abuses were both known and ignored.

5.     The case is about all of the young boys and girls who were sentenced to a lifetime of pain and anguish by the physical, emotional, and sexual abuse and neglect that they were forced to endure. Plaintiff is but just one of those children. There are countless others.

6.      Under the authority of Defendant, Director Mark A. Murray (hereinafter "Murray"), children at DCJDC were physically, mentally, and/or sexually abused and neglected by staff and peers. Perhaps worse than the abuse itself was the culture, one not simply of tolerance *of* abuse, but enthusiasm *for* abuse. This culture was enabled and advanced by Murray and his staff, evidenced by their continued failure to report and/or prevent suspected, reasonably knowable, and/or known child abuse and neglect.

7.     Sadly, this barbaric abuse continued unchecked due to the Pennsylvania Department of Human Service's callous disregard for the safety and well-being of the youth in its care. PA-DHS licenses, oversees, and regulates child residential facilities as defined by 55 Pa. Code Ch. 3800 to protect the health, safety and well-being of youth receiving care in a child residential facility.

8.     Despite numerous publicly documented incidents of abuse by DCJDC staff going back decades that were reported to both county and state agencies and employees, not once did officials at PA-DHS take meaningful steps to protect youth at DCJDC. In fact, it was not until March of 2021 that DCJDC was closed and that was at the direction of Delaware County, *not* DHS. In fact, incredibly, PA-DHS has not revoked the license of the facility to operate *to this day*. The failure of officials at PA-DHS to provide sufficient oversight of DCJDC and their continued

licensing of the facility despite DCJDC's continued violations of the minimum standards of Chapter 3800 placed Plaintiff perpetually in harm's way.

9.      The matter before this Court is also about Defendants failure to protect the Plaintiff and other children from severe and pervasive abuse that was rampant for years, perpetrated by staff, and the blatant refusal of their employees to report known and/or suspected child abuse that was being and/or had been committed upon children at DCJDC, of which they knew or should have known, as well as the unconscionable and outrageous conduct of Defendants in allowing DCJDC to exist as it did, to retain staff who not only abused and neglected children, but also threatened and intimidated minors to stay silent, after knowing of multiple instances of abuse and intimidation involving multiple staff members at DCJDC; thereby exposing children, including Plaintiff, again and again to known danger.

10.      This matter is also about the cover-up of abuse perpetrated by Delaware County, DCJDC and their staff/representatives/agents along with Defendant Child Guidance Resource Center (hereinafter "CGRC") in choosing to protect their own reputation and bottom line at the expense of the safety and well-being of children in need and in their care, custody, and/or control. The full extent of their efforts in fostering a culture of secrecy that allowed such pervasive abuse of children and the effects of same may likely never be fully known.

11.      Delaware County is required by Pennsylvania law to provide oversight and management of the Delaware County Juvenile Detention Center by appointing civilians to manage the facility, but instead, Defendant Delaware County delegated this non-delegable duty to a separate body, the Board of Judges. This structure unlawfully diverted oversight and management away from private civilians - all in violation of Pennsylvania law.

### *The Parties*

12.     Plaintiff, S.J., is an adult male whose name and address is not contained in this Complaint so as to protect his privacy and identity as he incurred injuries and damages of a sensitive nature as a result of the intentional and negligent acts and failures of Defendants outlined below.  Information which would or could identify Plaintiff is not contained herein.  Plaintiff may be contacted through his counsel as outlined herein.  Plaintiff is a citizen of the Commonwealth of Pennsylvania.

13.     Plaintiff S.J. has sought leave of Court to proceed anonymously with the filing of his Motion for Leave to Proceed Anonymously and for a Protective Order pursuant to Federal Rule of Civil Procedure 26(c). That motion was filed concurrently with the filing of this Complaint.

14.     Defendant, Delaware County, ("DC"), is a local government unit and/or agency of the Commonwealth of Pennsylvania with business offices located at 201 West Front Street, Media, Pennsylvania 19063.  DC is a "person" as the term is used in 42 U.S.C. § 1983.

15.     Further, Defendant, Delaware County, was the owner and/or operator of the DCJDC, as required by law under 16 P.S. §5538.

16.     Upon information and belief, at all relevant times, the Delaware County Board of Managers, which is comprised of agents of Defendant, Delaware County, was regularly certified by PA-DHS to operate the DCJDC pursuant to 55 Pa. Code Chapter 3800: Child Residential and Day Treatment Facilities.[4]

17.     Upon further information and belief, DC pays property taxes on the DCJDC

---

[4] For example, *see* Exhibit "C," attached, which is a certificate of compliance issued by PA-DHS (formerly known as the Department of Public Welfare) to the Delaware County Board of Managers for the operation of the Delaware County Juvenile Detention Center between August 13, 2009 – August 13, 2010.  Notably, even in 2009, the facility was issued a certificate to operate despite a noted violation of 55 Pa. Code §3800.141(a) for "fail[ing] to complete and document the required 24 hour Health and Safety Assessment within the required timeframe." *See* Exhibit C.

property, paid and/or pays the employees who work at DCJDC,[5] and contracts with other service providers on behalf of the DCJDC. [6]

18.     Defendant, Delaware County Juvenile Detention Center, ("DCJDC"), is a youth detention center, located at 370 Middletown Road, Lima, PA, 19037, owned, controlled, and/or operated by Defendant, Delaware County, Pennsylvania. Specifically, DCJDC is an activity of Delaware County, which is a political subdivision of the Commonwealth of Pennsylvania and body politic and lies within this district.

19.     According to its website, the DCJDC was once governed by the Board of Judges, under the direction of President Judge Kevin F. Kelly.

20.     However, as set forth herein, Defendant, DCJDC is not a part of the judiciary or judicial branch and the DCJDC is not an arm of the Commonwealth, despite the responsibilities and failures of the individual DHS Defendants relating to DCJDC as discussed more fully herein.

21.     At all relevant times, the DCJDC was an entity and arm of Delaware County and under Delaware County control.

22.     Moreover, not only was the DCJDC a Delaware County-run facility but any oversight or governance of the DCJDC by the Board of Judges was an impermissible  governing structure established by Defendant, Delaware County. See 16 P.S. §5538.

---

[5] Plaintiff has not been able to engage in discovery on the full extent of the employment relationship between the DCJDC staff and the County of Delaware. However, upon information and belief, the County hires and pays these individuals. For example, the attached Arbitration Decision reflects that a DCJDC employee's termination grievance was governed by the Collective Bargaining Agreement between the County of Delaware and the County of Delaware Public Employees' Association, Local 3107. See Exhibit B. This clearly dictates that DCJDC staff are employees of Defendant, DC. John Clark, Director of Labor Relations for the County was specifically copied as a recipient of a court order reviewing the termination of a detention officer at the Delaware County Juvenile Detention Center. See Exhibit "B." Moreover, in this same Order/case, Delaware County is referenced.  See Exhibit "B".
[6] One Affiant and employee of Defendant, CGRC, identified in Exhibit A to this Amended Complaint describes the value of these contracts between the county and CGRC as a basis for concealing the known abuses, stating: CGRC supervisors explained that it was critical for CGRC to maintain a friendly relationship with the Office of Juvenile Probation, which has influence over whether the CGRC maintains its lucrative contract with Delaware County." See Exhibit A.

23.     Service on the Board of Advisors, which oversees Defendant DCJDC, is not a judicial act, and is only to be carried out by a judge in the occasional event of a vacancy on the board by a member appointed by a judge, as specifically assigned by law in 16 P.S. § 5538 which requires that a board of advisors "shall" be comprised of "the county chief executive, the county controller, and eight private citizens, three to be appointed by the president judge of the court of common pleas and the other five to be appointed by the county executive."

24.     By structuring the oversight of the DCJDC as it did, Delaware County was not acting in compliance with Pennsylvania law at the time of Plaintiff's admission to DCJDC.

25.     In fact, Delaware County[7] is now shifting oversight and management of the DCJDC to a 10-member Board of Managers, which "will consist of three councilmembers, the county controller, and six citizen appointments: three chosen by chair of council and three chosen by President Judge Kevin Kelly."[8]

26.     This is further evidence that Delaware County had and continues to have control and oversight of operations at DCJDC.

27.     At all relevant times, DCJDC was licensed as a residential facility pursuant to 55 Pa. Code § 3800.11 by PA-DHS.

28.     The license was issued to the **Delaware County Board of Managers.**[9]

29.     Institutions like DCJDC receive a certificate of compliance from PA-DHS if they follow all applicable statutes, ordinances and regulations.

30.     Upon recognition that the DCJDC was not structured in accordance with

---

[7] Delaware County is managing a recent shift in leadership of the DCJDC, further evidencing the County's ownership and operation of this county facility. *See* Cooper, Kenny Delaware County to create board to oversee juvenile detention, Whyy.org , May 14, 2021, https://whyy.org/articles/following-abuse-allegations-delco-to-create-oversight-board-to-lead-juvenile-detention-center/, a copy of which is attached hereto as Exhibit "D."
[8] *Id.*
[9] *See* Exhibit C.

Pennsylvania law, PA-DHS should have immediately revoked its license.

31.     At all relevant times hereto, the individual members of the Board of Judges, appointed by Delaware County to oversee and manage the DCJDC, were acting as agents of Delaware County separate and apart from any judicial employment, duties, or functions.

32.     Defendant, Mark A. Murray, is an adult individual, employed by the County of Delaware, and the Director of the Delaware County Juvenile Detention Center, and is responsible for ensuring that the DCJDC provides for the maintenance and care of children while in the custody of the juvenile detention facility.

33.     Defendant Murray is sued in his official and individual capacities for his actions and/or inactions made under color of state law and in violation of Plaintiff's Constitutional rights as described more fully herein.

34.     ABC entities 1-10 are current and/or former public agencies or private entities who were responsible to ensure the safety and protection of children at DCJDC, and, more specifically, to prevent the abuses described more fully herein from occurring.

35.     Defendant Teresa D. Miller was the Secretary of the PA-DHS since on or about August 2017 until April 30, 2021, and is sued solely in her individual capacity. Defendant Miller is now President and CEO of Kansas Health Foundation which has its headquarters at 309 E. Douglas, Wichita, KS 67202.

36.     Defendant Miller directly and indirectly controlled and was responsible for PA-DHS's child welfare and juvenile justice policies and practices. Secretary Miller maintained her principal office at 625 Forster Street, Harrisburg, PA 17120.

37.     Defendant Theodore Dallas was Secretary of PA-DHS from the period of June 2015 until on or about August 2017 and is sued solely in his individual capacity. Defendant Dallas directly and indirectly controlled and was responsible for PA-DHS's child welfare and juvenile

justice policies and practices during the period he was Secretary of PA-DHS. Former Secretary Dallas is now President and Chief Operations Officer at Merakey Foundation, the corporate headquarters for which is located at 620 E. Germantown Pike, Lafayette Hill, PA 19444.

38.     Defendant Cathy Utz was, at all relevant times, the Deputy Secretary for OCYF within PA-DHS during the relevant time period and is sued in her individual capacity. Defendant Utz was directly and indirectly responsible for the OCYF child welfare and juvenile justice practices during the relevant time period. Former Deputy Secretary Utz is now an employee of Computer Aid, Inc. which maintains its headquarters at 1390 Ridgeview Drive, Allentown, PA 18104. Defendant Miller, Dallas and Utz are hereinafter referred to collectively as "the DHS Defendants".

39.     On March 12, 2021, DCJDC was ordered closed by President Judge Kevin F. Kelly as a result of reports of extensive child abuse taking place there, including, but not limited to, abuse described herein

40.     Defendants, DC, DCJDC, Murray, the DHS Defendants as named in their individual capacities (hereinafter "DHS Defendants") and ABC Entities 1-10 violated the clearly established federal Constitutional and statutory rights of Plaintiff under the Fourth, Eighth and Fourteenth Amendments, subjecting Plaintiff to harmful and degrading physical, mental and sexual abuse and neglect, including, but not limited to, rape and the use of excessive and unreasonable physical force, mental torture and neglect and by failing to protect him from harm and injuries at the hands of others.

41.     Defendants, DC, DCJDC, Murray, the DHS Defendants and ABC Entities 1-10 caused the injuries and harms to Plaintiff by failing to train, supervise and discipline the staff at DCJDC, including, but not limited to, the John Doe Defendants and, as a result, staff at DCJDC, including the John Doe Defendants, as a matter of practice and custom, engaged in the prohibited

conduct on a systematic basis with the expectation that their conduct would not be subject to discipline or sanctions.

42.     Further, in addition to failing to protect Plaintiff from physical, mental and sexual abuse and neglect by staff, Defendants, DC, DCJDC, Murray, the DHS Defendants and ABC Entities 1-10 failed to protect Plaintiff from assaults and abuse by fellow residents. In fact, fights and assaults between residents were encouraged by staff at DCJDC.

43.     Defendants, DC, DCJDC, Murray, the DHS Defendants and ABC Entities 1-10 failed to properly protect Plaintiff and have shown a reckless disregard and deliberate indifference to the widespread violation of Plaintiff's rights and others, despite knowing, or in the very least, in reckless disregard, for decades of the conduct of the John Doe Defendants, including physical, sexual and mental abuse and neglect, and the corresponding lack of protection for Plaintiff and the children residing at DCJDC.

44.     Defendant, Child Guidance Resource Center (CGRC), is a non-profit organization in Pennsylvania with its headquarters located at 200 Old West Chester Pike, Havertown, Pennsylvania, 19083. At all relevant times hereto, Defendant CGRC provided counseling and other services to children at DCJDC. CGRC and its employees were mandated to report known or suspected child abuse under Pennsylvania law.

45.     John Does 1-20 are current and former managers, supervisors, administrators, officials, staff, counselors and others who have been employed by or were under the control of Defendant Delaware County, who abused or facilitated the abuse of children at DCJDC. John Does 1-20 are sued in their individual and official capacities.

46.      John Does 21-40 are current and former managers, supervisors, administrators, officials, staff, counselors, and others who have been employed by or were under the control of Defendant DCJDC, who abused or facilitated the abuse of children at DCJDC. John Does 21-40

are sued in their individual and official capacities.

47.     John Does 41-60 are current and former PA-DHS secretaries, program directors, managers, inspectors, supervisors, administrators, officials, staff, counselors, the predecessors of Teresa D. Miller, Theodore Dallas, or Cathy Utz, and others, responsible for licensing DCJDC, and/or investigating reports of child abuse at DCJDC, who continued to certify/license the DCJDC for operation, despite knowledge of unlawful operating practices and/or the abuse of children at DCJDC, and/or who failed to take appropriate action upon receiving notice of the abuse of children at DCJDC. John Does 41-60 are sued in their individual capacities.

48.     John Does 61-80 are current and former managers, supervisors, administrators, officials, staff, counselors, and others who have been employed by or were under the control of Defendant, ABC Entities 1-10, who abused or facilitated the abuse of children at DCJDC. John Does 61-80 are sued in their individual and official capacities.

49.     John Does 81-100 are current and former managers, supervisors, administrators, officials, staff, counselors, and others who have been employed by or were under the control of the Defendant, Child Guidance Resource Center, who abused or facilitated the abuse of children at DCJDC. John Does 81-100 are sued in their individual and official capacities.

50.     Because of Defendants' conduct, Plaintiff suffered and will continue to suffer from physical bodily injuries, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life. Plaintiff has and will in the future sustain loss of earnings and earning capacity and has, and will, incur expenses for medical and psychological treatment, therapy and counseling. Defendants are liable for same as described more fully below.

51.     At all relevant times hereto, Defendants, DC, DCJDC, ABC Entities 1-10, and CGRC were acting by and through their duly authorized actual and/or apparent agents, servants

and employees, in particular, their staff, officers, guards, medical clinicians, clinical case workers, supervisors and directors acting within the course and scope of their actual and/or apparent agency and/or employment.

52.     Defendants herein are directly and vicariously liable to Plaintiff for injuries sustained as a result of negligence, gross negligence, outrageous conduct, and reckless misconduct, as described further herein, as well as for violations of Plaintiff's constitutional rights as described further herein, by persons or entities whose conduct was under their control, or right to control which conduct directly and proximately caused all of Plaintiff's injuries.

### *Jurisdiction and Venue*

53.     This matter is being brought within the statute of limitations pursuant to 42 Pa. C.S.A. § 5533(b) and pursuant to the laws of the Commonwealth of Pennsylvania including Pa. C.S.A. §§ 8522(b)(10) and 8542(b)(10).

54.     With respect to the Plaintiff, the conduct on the part of staff of DCJDC, in part, herein described, for which Defendant DC and DCJDC are vicariously liable, would constitute an offense, or a solicitation thereto, under 18 Pa. C.S.A. § 3121; 18 Pa. C.S.A. § 3122.1; 18 Pa. C.S.A. § 3123; 18 Pa. C.S.A. § 3124.1; 18 Pa. C.S.A. § 3124.2; 18 Pa. C.S.A. § 3125; and/or 18 Pa. C.S.A. § 3126. The resulting injuries to Plaintiff were caused by the intentional, willful, wanton and/or negligent actions and/or omissions of the Defendants described herein.

55.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983. At all relevant times, Defendants Murray, DC, DCJDC, the DHS Defendants, ABC Entities 1-10 and John Does 1-100 acted under the color of state law.

56.     This Court has supplemental jurisdiction over Plaintiff's state law claims.

57.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action is brought.

### *Facts*

58.     The Delaware County Juvenile Detention Center was a juvenile detention facility with an obligation to provide a secure setting for young children from the ages ten (10) through eighteen (18) years of age.[10]

59.     Children between the ages of ten (10) through eighteen (18) years of age are housed at the DCJDC for various reasons that include but are not limited to: children with behavioral issues, children in trouble with truancy, and children facing delinquency proceedings awaiting adjudication and/or disposition. Youth were involuntarily placed at DCJDC by court orders from Delaware County when they were judicially adjudicated delinquent pursuant to 42 Pa. Cons. Stat. Ann. § 6302 or other state juvenile court acts. During their placement youth were in the physical custody of DCJDC and could not leave DCJDC without permission from the institution and were otherwise detained.

60.     Recently, the Public Defender's Office of Delaware County initiated and then conducted a lengthy investigation and review of the DCJDC. Current and former DCJDC residents and   staff were interviewed as were various case workers who worked at DCJDC. Chief Public Defender for Delaware County Christopher Welsh, along with First Assistant Public Defender Lee Awbrey, wrote to Defendant, Teresa D. Miller, then-Secretary for DHS, expressing their "grave concerns about the health, safety and well-being of the children in custody" at DCJDC.[11]

---

[10]  https://www.delcopa.gov/courts/pdf/jd/Yearly.pdf
[11]  *See* March 12, 2021 correspondence from Christopher Welsh and Lee Awbrey of the Office of the Public Defender, County of Delaware to Teresa D. Miller, Secretary of the Department of Human Services, Commonwealth of Pennsylvania, with attachments, attached hereto as Exhibit "A."

61.     Specifically, Mr. Welsh's investigation revealed "multiple credible allegations of physical, sexual and mental abuse perpetrated by the DCJDC staff against children in their custody, where a disproportionate number of residents are children of color."[12]

62.     The Delaware County Public Defender's investigative findings are chilling and unconscionable. Just a few examples of their investigation include:

> o   "… through interviews with our clients and interviews with current and former DCJDC staff, our office has uncovered multiple credible allegations of physical, sexual, mental abuse perpetrated by the DCJDC staff against children held in their custody…"[13]

> o   "Youth detained at DCJDC are subjected to prolonged isolation as a form of punishment, sometimes for days or weeks…."[14]

> o   "Children are denied access to mental health supports and have difficulty accessing medical care…."[15]

> o   "The facilities are dirty, in disrepair, and in some instances, disgusting. We received reports of inadequate water access on residential units, heat that cuts out during winter, rodents, and bug infestations…." [16]

> o   In conclusion, Mr. Welsh and Mr. Awbrey stated: "We are deeply concerned for the health, safety and well-being of our clients and all of the children in custody at the DCJDC…."[17]

64.     These facts are especially troubling given that DCJDC promotes itself as a secure

---

[12] Id.
[13] Id.
[14] Id.
[15] Id.
[16] Id.
[17] Id.

custodial facility for its residents and between 2019 and 2020 alone, DCJDC housed a total of 782 children within its facility.[18]

### *History of Abuse at DCJDC*

#### *Physical, Sexual, Verbal and Psychological Abuse by DCJDC Staff*

63.     Despite DC, DCJDC, the DHS Defendants, Murray, John Does 1-80, and ABC Entities 1-10's duty to provide a safe and secure setting for the children that reside within the facility, its actions have demonstrated anything but safety and security. DC, DCJDC, the DHS Defendants, Murray, John Does 1-80, and ABC Entities 1-10's conduct has perpetuated the continued abuse of children housed at DCJDC.

64.     DC, DCJDC, the DHS Defendants, Mark A. Murray, John Does 1-80, and ABC Entities 1-10's actions and omissions have displayed blatant disregard for the health and safety of the children they serve, demonstrated by the physical, sexual, and psychological abuse and neglect committed by DCJDC staff over decades.

65.     There are numerous accounts of physical and sexual abuse committed by DCJDC's staff followed by Defendants turning a blind eye to these confirmed acts.

66.     Despite the many incidents that occurred under numerous administrators, DC, DCJDC, the DHS Defendants, Mark A. Murray, John Does 1-80, and ABC Entities 1-10 outrageously and unconscionably allowed the abuse to continue and chose not to alert the public of their findings and/or danger associated with entering DCJDC.

67.     Nor did DC, DCJDC, the DHS Defendants, Mark A. Murray, John Does 1-80, and ABC Entities 1-10 or their predecessors take any remedial measures whatsoever to prevent future abuse from occurring.

---

[18] Id.

68.     These obvious affirmative acts and omissions led to thousands of at-risk, vulnerable minors (many from troubled backgrounds and broken homes in need of supervision and rehabilitation) being sent against their will and by court order to DCJDC away from their families and into the throes of an abusive environment.

69.     The numerous accounts of physical, sexual and psychological abuse children suffered while in DC/DCJDC's care include, but are not limited to:

   a.   DCJDC staff anally raped Plaintiff S.J. when he was fifteen (15) years old;

   b.   DCJDC staff attempted to anally rape and sexually abused other children while other staff served as a "look-out;"

   c.   DCJDC staff raped and sexually abused multiple minor females during "private parties" that involved administering illegal drugs and alcohol to the minors to facilitate the sexual abuse;

   d.   DCJDC staff slapped a child's head into a metal wire mesh lined window. The force of DCJDC's staff slapping the child caused the reinforced window to crack;

   e.   A DCJDC staff member shoved and hit a child resident;

   f.   A DCJDC supervisor violently shoved a child into a wall as the other staff watched;

   g.   DCJDC guards, unchecked by supervisors, used extreme amounts of force to restrain children;

   h.   A DCJDC child resident reported on at least two (2) occasions, being placed in a chokehold by DCJDC staff which almost caused him to lose consciousness.

   i.   A non-resident reported fearing for the life of a child as they watched a DCJDC guard throw the child against a wall in a violent chokehold;

j.  Another repulsive incident involved a DCJDC guard grabbing a pregnant child resident by her shoulders and yelling in her face. After the youth fell to the floor, the DCJDC guard proceeded to carelessly "step over her in a menacing posture as she lay[ed] on the ground" and continued to scream at her. It was later reported that this DCJDC guard's intent was to cause the child to miscarry;

k.  Another child was victim to a DCJDC guard who repeatedly punched her in the face while another DCJDC guard held her down. Other DCJDC staff carelessly watched as the child was being viciously beaten;

l.  Another horrendous incident involved the physical abuse of a child resident who suffered from a severe mental illness attempting to asphyxiate herself by swallowing clothing. After DCJDC staff was able to intervene and remove the clothing, three (3) DCJDC staff members violently forced the child resident's head into a toilet forcing her to drink from it after the child resident asked for water; and

m.  DCJDC staff also refused to follow suicide protocols as they watched idly as a child had clothing wrapped tightly around her neck causing discoloration in her face and veins to protrude from her neck;

70.  DCJDC staff bragged about the brutal beatings they imposed on the children. A DCJDC staff member was observed gloating about punching a child in the face and stated the staff member "fucked her up."

71.  In addition to the heinous physical abuse the children suffered at the hands of DCJDC staff, the children also suffered from incessant and despicable verbal and emotional abuse.

72.     There are several reports of the pervasive verbal abuse and threats the children residents suffered while in DCJDC's care. A DCJDC staff member has been observed getting in the face of a child and telling him "I'll see you on the street. I'll beat you up. I'll take care of it."

73.     While in the presence of DCJDC's former Lead Clinician, a child resident courageously reported to the DCJDC supervisors the threats he received from an overnight DCJDC staff member. The child informed the supervisor that the DCJDC staff member threatened the child with the statements he was going to "fuck you up" and "fuck [his] mom." DCJDC staff have also been heard yelling out "bitch" to the children.

74.     The verbal abuse and threats made by the DCJDC staff were often racist, misogynistic or offensive to LGBTQ residents. The children were forced to hear vulgar language used by DCJDC staff including occasions when staff shouted out "Fuck you, pussy!" and "Suck my dick, bitch!" at the children.

75.     When attacking the children, DCJDC staff attacked the gender, religious, racial, linguistic, and identity status of the children. These incidents include:

    a.  Placing a Muslim child in solitary confinement for wearing a hijab in a color the DCJDC staff did not like;

    b.  DCJDC staff refused to believe that a Spanish-speaking child could not understand English. Instead of trying to assist the child, DCJDC staff addressed the language barrier by yelling at the child in English;

    c.  Another incident of obscene use of language included DCJDC staff yelling at a child calling him the N-word.

76.     Children of the LGBTQ community have also suffered poor treatment by DCJC staff.  DCJDC's staff has degraded, shamed and humiliated the transgender children at the facility.

77.     Whenever transgender children were in the care of DCJDC, staff refused to use preferred pronouns, denied a transgender child to a wig and did not permit a transgender girl to shave her facial hair.

78.     To further perpetuate their disdain for the LGBTQ community, DCJDC staff outed a transgender child, did not continue her hormone treatment, and did not allow her to live on a unit consistent with her gender identity.

79.     DCJDC leaders forbid staff from attending training that taught transgender cultural competency which was offered by the state at no cost.

80.     The verbal abuse did not stop at the four walls of the DCJDC as a former child resident reported receiving inappropriate messages from a male DCJDC staff member after her release.

81.     The children also suffered sexual abuse which DCJDC ignored. A child reported a male DCJDC staff coming onto her in a sexual manner but was too fearful of retaliation to disclose the staff member's name.

82.     An employee of CGRC recalled a DCJDC staff member, known as "Big Rob," playing a song by R. Kelly, who currently stands charged with sexually abusing children, while chasing a child repeating "I'm gonna get you!"

83.     Despite this incident being reported to DHS' Childline, "Big Rob" remained employed at the DCJDC. The averments above are set forth in Exhibit "A".

84.     It is believed and therefore averred that Defendants DC and DCJDC were aware of the abusive patterns used in the facility and have done nothing to stop it.

85.     It is also believed and therefore averred that Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-100, CGRC and ABC Entities 1-10 either knew or

should have known of the pervasive and severe abuse and neglect being committed upon children at DCJDC as described above yet did nothing to prevent it from happening.

### *Excessive, Unjustified, and Prolonged Isolation*

86.     Many of the juveniles detained at DCJDC have suffered and/or are suffering from diagnosed mental, emotional, and/or developmental disabilities.

87.     The children also came with documented histories of trauma and childhood victimization. The use of solitary confinement will only exacerbate these issues while also perpetuating the continued abuse of children within facilities such as DCJDC.[19]

88.     While Pennsylvania law does permit the use of seclusion under strict supervision, its use is severely limited by statute.[20]

89.     DCJDC's use of solitary confinement was not permitted under Pennsylvania law as  juvenile detention facilities cannot isolate children for days at a time, use isolation as a form of punishment, nor may they use isolation as a threat to control a child's behavior.[21]

90.     The use of solitary confinement has produced a long line of precedent of being harmful, increasing risk of self-mutilation, and thoughts of suicide. Solitary confinement can aggravate the onset of pre-existing mental illness while also leading to greater mental health problems such as greater anxiety, depression, sleep disturbances, paranoia, aggression and an increased risk of cardiovascular issues.[22]

---

[19] *See* Sue Burrell, *Trauma and the Environment of Care in Juvenile Institutions*, THE NATIONAL CHILD TRAUMATIC STRESS NETWORK, (Aug. 2013) at 4,
https://www.nctsn.org/sites/default/files/resources/trauma_and_environment_of_care_in_juvenile_institutions.pdf
("[T]he most potentially damaging way youth can be re-traumatized is in the use of … solitary confinement.").
[20] *See* 55 Pa. Code §3800.274(17) (ii)(Under Pennsylvania law, absent an order by a licensed physician, physician assistant or registered nurse, no child shall be subjected to solitary confinement for more than four (4) hours. There must be a re-examination and new order for every additional four (4) hours.)
[21] Id.
[22] *See Solitary Confinement of Juvenile Centers*, https://www.apa.org/advocacy/criminal-justice/solitary.pdf

91.     Recognizing the detrimental effects of the use of solitary confinement, the National Task Force on Children Exposed to Violence, among other nationally recognized organizations, recommends abolishing the use of solitary confinement against children.[23]

92.     The child residents at DCJDC, including Plaintiff S.J., have been subjected to unlawful prolonged isolation spanning days at a time. During these times of prolonged isolation there have also been instances where children were arbitrarily deprived of access to mental health counselors.

93.     One incident involved a child that was forced into solitary confinement for two (2) weeks due to secondary exposure to Covid-19 despite Covid-19 safety precautions not being consistently followed as Delaware County Covid-19 guidelines do not require employees to quarantine after secondary exposure. On another occasion, a child was left in solitary confinement for several months. *See* Exhibit "A".

94.     Another instance involved a child suffering from mental illness covering herself in her own excrement while in solitary confinement. The DCJDC ensured that the child remained locked in solitary confinement for three (3) days without water or the ability to shower. *See* Exhibit "A".

95.     Despite the evidence of its harmful use, DCJDC, under the licensing and supervision of DC, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, and John Does 1-80, proceeded with its continued use of solitary confinement.

96.     In fact, Defendant Murray further encouraged and promoted the use of solitary confinement by his DCJDC staff as a form of punishment against the children.

---

[23] *See* Feierman, Lindell and Eaddy, *Unlocking Youth, Legal Strategies to End Solitary Confinement in Juvenile Facilities*, JUVENILE LAW CENTER (2017) at 13.
https://jlc.org/sites/default/files/publication_pdfs/JLC_Solitary_Report-FINAL_0.pdf

97.     During a January 7, 2021, hearing, DCJDC Director Murray openly admitted to the use of solitary confinement against the children.

98.     Murry testified that the use of solitary confinement was derived from situational events. The "situational" event Murray testified to was in reference to the immediate use of solitary confinement against a child as a form of punishment after the child stated to the guard that she would slap them.

99.     The use of solitary confinement against the child was in violation of Pennsylvania regulations.[24]

100.    From this encounter, DCJDC went through great lengths to obtain a court order to extend the child's solitary confinement from an already long four (4) to eight (8) hour confinement to a full forty-eight (48) hours.

101.    It is believed and therefore averred that all Defendants, DC, DCJDC, the DHS Defendants, Mark A. Murray, CGRC John Does 1-80 were aware of the improper use of solitary confinement of children at DCJDC and refused to report or stop the improper practice despite it being clear child abuse.

### *Unacceptable Medical Care, Mental Health Care, Education and Facilities*

102.    The mental health of a child is crucial to the development of their emotions and other behaviors. There are at least 16.5 million children in the United States that suffer from some form of a mental disorder.[25]

103.    Access to appropriate treatment for mental illness can make a great difference in a child's life.[26]

---

[24] *See* 55 Ps. Code § 3800.202; *see also* 55 Pa. Code §§ 3800.212 (c)(3), 3800.274(17)(ii).
[25] *Data and Statistics on Children's Mental Health*, (last reviewed June 15, 2020), https://www.cdc.gov/childrensmentalhealth/data.html
[26] *Id.*

104.    It was and is the duty of DC, DCJDC, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10 to provide the necessary mental health care, medical care, adequate education and facilities to the youth that are under its care.

105.    Often, children at DCJDC were denied access to mental health support and/or have difficulty accessing medical care.

106.    Knowing the need to have such access to mental health supporters, DCJDC developed deceptive means to prevent children from having access to counselors.

107.    A DCJDC employee described that "[s]ome DCJDC staff who placed these children on unit restriction deliberately withhold mental health services during the unit restriction period. To access these children and provide necessary treatment, I had to learn which DCJDC staff members were most likely to give me permission."

108.    Children were also arbitrarily denied access to mental health counselors. Oftentimes, the denial of access to mental health counselors was retaliatory.

109.    Additionally, children's healthcare was often ignored and disregarded. A child suffering from discomfort was turned away because the medical staff refused to believe her symptoms. It was subsequently determined that the child was suffering from a sexually transmitted disease. This neglect resulted in a two (2) week delay in providing the child necessary treatment. *See* Exhibit "A".

110.    DC and DCJDC had no interest in furthering the education of the children evidenced by its poor curriculum. The education provided to children was "one size fits all" in which children would receive only two (2) hours of schooling and worksheets that were not tailored to their education level. *See* Exhibit "A".

111.    In addition to the poor education, the children suffered from severely poor living conditions.

112.    The facility was in deplorable condition as it was covered in filth. Parts of the facility were often covered in mouse droppings and infested with bugs. Some rooms were left unclean for weeks or months at a time. *See* Exhibit "A".

113.    Additionally, the facility lacked adequate water access in the residential units. Toilets and showers did not drain properly, there was an occasion where a child was forced to take a cold shower because her unit did not have hot water.

114.    Even more disturbing is that the children lacked access to proper drinking water as there was only one (1) water fountain within the entire facility. The lack of adequate water access was problematic in particular for children whose medication caused dry mouth and other side effects. DCJDC staff ignored CGRS staff's request to provide a simple pitcher of water to the children.

115.    Children at DCJDC suffered through numerous winters without heat, some occasions lasting as long as a week. When CGRC staff questioned DCJDC regarding the heat, DCJDC stated there was nothing that could be done. A Chidline complaint was filed about the freezing temperatures and the heat was restored later that day.[27] *See* Exhibit "A".

116.    There were instances when it was so cold in the DCJDC facility that children reported seeing their breath. During these winter months DCJDC staff were protected with coats, hats and scarves while the children suffered as they were not given any winter clothing. *See* Exhibit "A".

---

[27] Childline is a hotline service in which child abuse is to be reported, https://www.dhs.pa.gov/keepkidssafe/Pages/default.aspx.

117.    Under the National Food Program, the child residents are eligible to receive free breakfast and lunch. Despite this eligibility, the food was inadequate as it was often inedible and as a result the children were often left hungry. DCJDC staff also refuse to accommodate children who are vegetarian.[28]

118.    The DCJDC kitchen staff also failed to comply with sanitary guidelines.

### DCJDC's Culture of Secrecy

119.    The environment at DCJDC fostered a culture of secrecy among the Defendants and Defendant-agencies involved in its operation and management by instilling fear and by creating the ever-present threat of retaliation by the DCJDC staff if children were to disclose the abuse they suffered.

120.    Further, by structuring the channels of oversight and management in direct violation of Pennsylvania law, the Defendants sought to minimize scrutiny and liability for their grossly inadequate management of the DCJDC.

121.    Children would often beg the Mental Health Clinician to refrain from reporting abuse to authorities as they feared the disclosure would only result in retaliation from the DCJDC staff and make matters worse for them.

122.    Despite there being video cameras on the premises, DCJDC staff were well aware of the blind spots where there was no camera coverage. It is in these areas where the previously outlined instances of physical abuse largely occurred. It was also in these areas where children were most vulnerable and put in danger. *See* Exhibit "A".

---

[28] *See* https://www.delcopa.gov/courts/juveniledetention.html

123.     The deliberate, strategic, and premeditated actions of the DCJDC staff to ensure that their abusive actions would not be recorded on camera truly exemplifies the scope and scale of the abuses occurring within this facility (and other juvenile detention centers alike).

124.     In addition to purposely hiding their abusive acts, DCJDC staff have also altered reports to try and corroborate their false accounts when an incident involving force was reported.

125.     To further ensure the secret and abusive culture, children have been deterred from telling the truth by being told no one would believe them. *See* Exhibit "A".

126.     In the above-mentioned incident where a child courageously reported a threat by an overnight DCJDC staff to the DCJDC supervisor, the supervisor responded, "Do you really think a judge is going to believe a bunch of juvenile delinquents over a corrections officer?" *See* Exhibit "A".

127.     When Childline reports were made, some DCJDC staff asked for a "heads up" before the report is made. *See* Exhibit "A".

128.     DCJDC staff would retaliate against those who made Childline reports by giving them the silent treatment, denying them access to children for mental health services, and responding with other spiteful behaviors. *See* Exhibit "A".

129.     DCJDC leadership encouraged the secrecy of the horrid physical, sexual, and psychological abuse the children suffered by coaching certain children on how to interact with investigators. DCJDC leaders would bribe children, who were often staved, with candy to skew the investigation to further hide the abuse the children suffered. *See* Exhibit "A".

130.     Despite the presence of cameras within the facility to capture the abuse the children suffered, these videos were often hidden from investigators and on other instances flat out ignored. *See* Exhibit "A".

131.    DC and DCJDC were aware of the conduct of staff and other employees to hide the physical abuse the children suffered. DCJDC encouraged the concealment of the abuse the children suffered and has done nothing to end the secrecy culture or protect the children.

### CGRC's Role in the Abuse at DCJDC

132.    CGRG is a nonprofit organization and the largest provider of children's mental health services in the greater Philadelphia region.[29]

133.    Among its various services, CGRC also employs mental health staff that provide mental health services to juvenile detention centers such as DCJDC.

134.    The CGRC provided services at the DCJDC through its contract with Delaware County.

135.    As clinical professionals, CGRC staff had a duty to report abuse children suffered at the hands of DCJDC and its staff but instead was instructed to turn a blind eye and in fact did so.

136.    The CGRC encouraged the abuse the children suffered by instructing the CGRC staff to give DCJDC staff "a heads up" when filing a Childline complaint which allowed DCJDC staff time to prepare an explanation and fabricate their accounts. *See* Exhibit "A".

137.    Despite CGRC's alleged support of the closing of DCJDC and the investigation that followed, CGRC did nothing to stop the abuse the children suffered. Instead CGRC's affirmative actions and omission furthered the abuse and DCJDC's attempts to keep it hidden.[30]

138.    Due to pressure by CGRC leadership, CGRC psychiatrists fabricated reports that were used in court to ensure Delaware County Juvenile Probation's desired results. CGRC staff

---

[29] *See* https://www.cgrc.org/
[30]*See* Liia Richmond, *Statement Regarding Lima Detention Center*, (Mar. 14, 2021), https://cgrc.org/blog/statement-re-lima-detention-center/

was repeatedly told not to "rock the boat" and were warned against working with the Public Defender's Office regarding the abuse of the children.

139.    CGRC, its leadership, and its staff were more concerned with their own bottom line and reputation instead of the health and safety of the children as CGRC staff was encouraged to refrain from exposing the abuse that occurred to prevent antagonizing the Delaware County Juvenile Probation as that would cost CRGC its "lucrative contract" with the Delaware County.

140.    CGRC was aware of the abuse that occurred and had a duty to report abuse and but chose not to do so in many instances.

### PA-DHS Failed to Ensure the Safety of Children at DCJDC

141.    PA-DHS has a duty to ensure the health, safety, and well-being of children in the child welfare and juvenile justice systems.

142.    The juvenile justice system in Pennsylvania and throughout the United States was founded on the recognition that youth who commit delinquent acts are fundamentally different from adults who commit crimes. Youth are less culpable, more vulnerable, and more susceptible to treatment and rehabilitation. The juvenile justice system is therefore designed to provide for the care, supervision and rehabilitation of youth committing delinquent acts. *See, e.g.*, *In re MD.*, 839 A.2d 1116, 1120 (Pa. Super. Ct. 2003).

143.    The Pennsylvania Juvenile Act thus aims "[t]o provide for the care, protection, safety and wholesome mental and physical development of children coming within the provisions of [the Act]." 42 Pa. Cons. Stat. Ann. § 6301(b)(1.1). The Act endeavors to achieve its purposes "in a family environment whenever possible, separating the child from parents only when necessary for his welfare, safety or health or in the interests of public safety." *Id*. at 6301(b)(3).

144. For youth adjudicated delinquent, the Act is designed to provide "... programs of supervision, care and rehabilitation..." that facilitate "...the development of competencies to enable children to become responsible and productive members of the community." *Id*. at 6301(b)(2).

145. Courts in Pennsylvania have recognized that, while principles and policies underlying the juvenile justice system may have evolved since its creation, "particular importance is still placed upon rehabilitating and protecting society's youth." *In re J.F.*, 714 A.2d 467, 471 (Pa. Super. Ct. 1998); 42 Pa. Cons. Stat. Ann. § 6301(b)(3).

146. In Pennsylvania, PA-DHS plays a significant role in the protection, rehabilitation, and treatment of young people in the juvenile justice system by licensing child residential facilities.

147. Pennsylvania courts may only commit children to such child residential facilities that are approved by PA-DHS. *See* 42 Pa. Cons. Stat. Ann. § 6352(a)(3).[31]

148. PA-DHS approves facilities through a licensing process that is supposed to ensure they meet the minimum standards that are set forth in Chapter 3800 of the Pennsylvania Administrative Code. Each facility must be individually inspected at least once per year, and PA-DHS issues a certificate for compliance for each physical structure within a facility that qualifies for a certificate. 55 Pa. Code § 3800.4. PA-DHS's issuance of the certificate of compliance to a facility indicates that the facility follows all applicable statutes, ordinances, and regulations. 55 Pa. Code § 20.53. PA-DHS has the authority to conduct additional announced and unannounced inspections including inspections in response to complaints. 55 Pa. Code § 20.33. If during inspections, PA-DHS finds evidence of "gross incompetence, negligence, misconduct in operating

---

[31] The statute refers to the Department of Public Welfare, which has been redesignated as PA-DHS. *See* 62 P.S. § 103; 62 Pa. Cons. Stat. Ann. § 103 n.2.

the facility or agency, or mistreatment or abuse of clients, likely to constitute an immediate and serious danger to the life or health of the clients," PA-DHS must take immediate action to remove the clients from the facility. 55 Pa. Code § 20.37.

149.    For other concerns regarding noncompliance with licensure or approval regulations, facilities must submit a written plan to correct the noncompliance items along with a period of time to correct the items. 55 Pa. Code § 20.52. PA-DHS may also deny, refuse to renew, or revoke a certificate of compliance for failure to comply with applicable regulations, failure to submit or comply with an acceptable plan to correct noncompliance of items, mistreatment or abuse of clients, gross incompetence, negligence or misconduct in operating the facility, and fraud and deceit in regard to obtaining or using their certificate of compliance. 55 Pa. Code § 20.71(a).

150.    The minimum licensing requirements in Chapter 3800 of the Pennsylvania Administrative Code set forth numerous rights that young people in child residential facilities have. Children in facilities have the right to "rehabilitation and treatment." 55 Pa. Code § 3800.32(l). Children must be treated with "fairness, dignity and respect." 55 Pa. Code § 3800.32(c). They have the right to "appropriate medical, behavioral health and dental treatment." 55 Pa. Code § 3800.32(k). They have a right not to be "abused, mistreated, threatened, harassed or subject to corporal punishment," or subject to "unusual or extreme methods of discipline which may cause psychological or physical harm to the child. 55 Pa. Code § 3800.32(b), (n). Even in instances when physical "restraints" against children are permitted, Chapter 3800 articulates clear guidelines over when and how such restraints may be employed, and the training requirements for staff authorized to restrain young people. *See* 55 Pa. Code §§ 3800.202-205, 211-211a. Any suspected child abuse must be immediately reported, and allegations of child abuse involving facility staff requires the facility to submit and implement a supervision plan. 55 Pa. Code §

3800.15. Upon admission to a child residential facility, children and their parents must be informed of the child's rights, and their right to lodge grievances without fear of retaliation. 55 Pa. Code § 3800.31. Facilities may not deprive children of specific or civil rights or use their rights as an award or sanction. 55 Pa. Code § 3800.33.

151.   For years, the DHS Defendants and John Does 40-60 knew or should have known about the routine violence against youth at DCJDC yet failed to take any meaningful action to curtail it and protect youth placed there. The DHS Defendants and John Does 40-60 continued to license DCJDC despite its noncompliance with numerous 3800 regulations.

### The Abuse of Plaintiff S.J.

152.   Plaintiff S.J. was a resident at the Delaware County Juvenile Justice Center intermittently from the ages of fourteen (14) to seventeen (17) from the years of approximately 2015 to 2019.

153.   During Plaintiff S.J.'s first stay at the DCJDC, he was physically assaulted and sexually harassed by Chris Thomas, who, upon information and belief, was a correctional officer supervisor. Thomas punched, hit, and struck Plaintiff on more than one occasion, causing him physical injury. Additionally, Thomas would watch Plaintiff use the bathroom and in the shower, often making comments on Plaintiff's body, which made him feel uncomfortable and violated. Thomas also regularly made comments to Plaintiff to "go suck a dick", "suck my dick," and even called Plaintiff a "faggot" on more than one occasion.

154.   Upon information and belief, Plaintiff S.J. reported Thomas's behavior via ChildLine. DHS Defendants received this report and interviewed Plaintiff concerning it, but failed to do anything to address Thomas's behavior.

155.   When S.J. was approximately fifteen (15) years old, he was a resident at Delaware County Juvenile Justice Center for approximately eight (8) months.

156.   During this time period, Plaintiff S.J. was repeatedly sexually abused by a male officer named "Mr. Robinson".

157.   Plaintiff was harassed and called "gay" by other juvenile residents at DCJDC, which caused him stress, humiliation, and anguish. One day after being taunted,  "Mr. Robinson" came to his cell and Plaintiff confided in him that other children were calling him "gay".

158.   "Mr. Robinson" then coerced minor-Plaintiff to perform oral sex on him in Plaintiff's cell. "Mr. Robinson" ejaculated into Plaintiff's mouth.

159.   Thereafter, "Mr. Robinson" asked the minor-Plaintiff if he wanted him to "put it in" Plaintiff's "butt." Plaintiff told "Mr. Robinson" "no". However, "Mr. Robinson" overpowered Plaintiff and forcibly sodomized Plaintiff inside of his cell.

160.   "Mr. Robinson" forced Plaintiff to engage in oral and anal sex on more than one occasion. This occurred both in Plaintiff's cell and in the showers at DCJDC.

161.   When Plaintiff S.J. was approximately sixteen (16) years old, he was also sexually abused by female staff member "Ms. Meadows" at DCJDC several times. "Ms. Meadows" was involved in a romantic relationship with fellow DCJDC staff member named "Mr. Elliott." Whenever the two were fighting, "Ms. Meadows" would tell Plaintiff that she needed someone with whom to have sex. "Ms. Meadows" would bring Plaintiff gifts and homecooked meals in exchange for sex.

162.   "Ms. Meadows" coerced Plaintiff to perform oral sex on her approximately nine (9) to ten (10) times. She also forced Plaintiff to engage in sexual intercourse with her on more

than one occasion. These acts of sexual abuse took place in the showers at DCJDC because there were no cameras inside to capture the abuse perpetrated against him.

163.     "Ms. Meadows" abuse of Plaintiff ended after she informed him that he had impregnated her.

164.     Upon information and belief, "Ms. Meadows" was sexually abusing at least three (3) other juvenile residents of DCJDC in a similar matter at or near the time she was abusing Plaintiff.

165.     "Mr. Elliott" apparently discovered that "Ms. Meadows" had engaged in sexual conduct with Plaintiff and, rather than report this abuse, "Mr. Elliot" instead chose to physically assault Plaintiff in retribution. "Mr. Elliot" repeatedly punched and hit Plaintiff S.J. in his ribs and on his back and strangled Plaintiff, causing him physical injury.

166.     Over his time at DCJDC, Plaintiff was also physically abused and assault by other staff, including Malik Johnson, "D. Johnson", "Mr. Mahn" and "Mr. Tomp".

167.     Malik Johnson, a correctional officer at DCJDC, once ordered Plaintiff to go into his cell after alleging some wrongdoing committed by Plaintiff. When Plaintiff denied that he had violated any rules or had done anything to deserve being disciplined, Malik Johnson repeatedly punched Plaintiff in the face and body, causing him injury. Malik Johnson also physically struck, punched, and hit Plaintiff on other occasions during his time at DCJDC.

168.     Plaintiff S.J. reported the abuse perpetrated against him to "Ms. Blake", who was a social worker employed by CGRC at DCJDC. Again, upon information and belief, DHS Defendants received this report and interviewed Plaintiff concerning it, but failed to do anything to address Malik Johnson's behavior. In fact, Plaintiff continued to be physically abused by Malik Johnson after he reported this abuse

169.   "Mr. Mahn", a correctional officer at DCJDC, was known to physically assault multiple juvenile residents at DCJDC and did so out in the open, in front of Plaintiff and other staff members. On one occasion, "Mr. Mahn"  played basketball against Plaintiff S.J. and other juvenile residents. During the game, "Mr. Mahn" intentionally pushed Plaintiff into a window, causing him to break through the glass and giving Plaintiff large, deep lacerations along his right arm, his right shoulder, and on his back. Glass was also lodged in Plaintiff's back as a result of being pushed.

170.   Another employee of DCJDC took Plaintiff to the hospital after "Mr. Mahn" pushed Plaintiff into the glass window. While there, Plaintiff was received medical attention and was given several stitches for his lacerations. However, these injuries left permanent scarring on Plaintiff's body.

171.   Similarly, "D. Johnson" and "Mr. Tomp", who were also correctional officers, repeatedly physically abused Plaintiff while he was a resident of DCJDC. These staff members would punch, hit, slap, smack, restrain, and otherwise physically harm Plaintiff on multiple occasions while he was a resident of DCJDC.

172.   Throughout all of Plaintiff S.J.'s stays at DCJDC, the staff of DCJDC and CGRC were aware of and/or took part in, the physical, mental and/or sexual abuse and neglect of S.J., a minor.

173.   Plaintiff S.J.'s experience at DCJDC caused and/or exacerbated pre-existing mental health conditions, including anxiety, depression, PTSD, bipolar disorder, borderline personality disorder, and ADHD,  and further traumatized him.

174.   DCJDC and CGRC knew of Plaintiff S.J.'s mental health status and knowingly allowed and/or condoned staff physically, sexually, and mentally abusing him.

175.     It is believed and therefore averred that the sexual, physical and mental abuse of minors taking place at DCJDC was known to Defendants DC, DCJDC, the DHS Defendants, Mark A. Murray, and CGRC.

176.     As a direct and proximate result of the physical, mental, and sexual abuse and neglect committed by the staff at DCJDC, Plaintiff S.J. suffered physical and emotional injuries, as more fully set forth in this Complaint. As a result of the abuse at DCJDC, Plaintiff S.J. was severely mentally, psychologically, and emotionally damaged.

177.     Plaintiff S.J. has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including headaches, insomnia, nightmares, and anxiety attacks, embarrassment, loss of self-esteem, disgrace, humiliation, flashbacks, loneliness, suicidality, tension, confusion, guilt, and loss of enjoyment of life. The significant emotional and psychological injuries sustained by Plaintiff S.J. dramatically transformed his personality.

178.     Throughout his life since the abuse, Plaintiff S.J. has struggled with symptoms of post-traumatic stress disorder. As a result of these problems Plaintiff has suffered extreme difficulty in interpersonal relationships, among other problems.

179.     All of the above physical, psychological, and emotional injuries were proximately caused by the negligence, carelessness, recklessness, and other tortious and outrageous acts or omissions of Defendants as set forth in this Complaint.

180.     DC and DCJDC staff, including, but not limited to, the John Doe Defendants, engaged in unpermitted, harmful and offensive sexual conduct and contact upon the person of Plaintiff in violation of Pennsylvania State law. Said conduct was undertaken while the perpetrators were employees and agent of Defendant DC, CGRC, DCJDC and/or ABC Entities 1-

10, while in the course and scope of employment with Defendant DC, DCJDC and/or ABC Entities 1-10 , and/or was ratified by Defendants DC, DCJDC and/or ABC Entities 1-10.

181. Prior to or during the abuse alleged above, Defendants Murray, DC, DCJDC, the DHS Defendants, the John Doe Defendants and/or ABC Entities 1-10 knew, had reason to know, or were otherwise on notice of the unlawful physical, mental and sexual abuse and neglect of children committed by DCJDC staff. Defendants failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of unlawful sexual conduct in the future by staff, including, but not limited to, preventing or avoiding placement of staff in functions or environments in which contact with children was an inherent part of those functions or environments. Furthermore, at no time during the periods of time alleged did Defendants have in place a system or procedure to supervise and/or monitor employees, volunteers, representatives or agents to ensure they did not molest or abuse minors in the care of the Defendants.

182. Defendants knowing acquiescence and silence with respect to the known, or reasonably knowable, activities of DCJDC staff constituted a course of conduct through which acts of sexual perversion and the violation of childhood innocence were condoned, approved, and effectively authorized.

183. Through its failure to timely reprimand and sanction the acts referenced herein, and for all of the other reasons set forth in this Complaint including, without limitation, its failure to take the steps necessary to prevent the occurrence of such reprehensible acts, Defendants DC, DCJDC, Murray, John Doe Defendants and/or ABC Entities 1-10 ratified said actions and, accordingly, are vicariously liable for the actions of all staff of DCJDC.

184. As a result of the above-described conduct, Plaintiff has suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional

distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

## COUNT I - NEGLIGENCE
## Plaintiff v. Defendants DC, DCJDC, MURRAY, JOHN DOES 1-40, 61-100 and ABC Entities 1-10

185.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

186.    At all relevant times, Defendants DC, Murray, DCJDC, John Does 1-40 and 61-100 and/or ABC Entities 1-10, owed a duty to maintain a safe and habitable environment for the minors being detained at DCJDC, specifically Plaintiff.

187.    At all relevant times, Defendants had a duty to protect and safeguard Plaintiff from hurt, harm and danger while they were under their supervision and detained at DCJDC.

188.    At all relevant times, Defendants had a duty to ensure that DCJDC employees were not sexually abusing its minor residents.

189.    At all relevant times, Defendants had a duty to provide for Plaintiff's basic human needs, including the safety of his person and his living environment.

190.    At all relevant times, Defendants DC, Murray, DCJDC, John Does 1-40 and 61-100 and/or ABC Entities 1-10, knew or should have known that their agents, employee, servant and/or staff members were sexually abusing Plaintiff and/or a risk to sexually abuse Plaintiff.

191.    Defendants DC, Murray, DCJDC, John Does 1-40 and 61-100 and/or ABC Entities 1-10 knew, had reason to know, or were otherwise on notice of the unlawful conduct of DCJDC

staff and failed to protect the safety of children in their detention center, including Plaintiff. Defendants failed to take reasonable steps and failed to implement reasonable safeguards to prevent acts of unlawful sexual abuse and to prevent or avoid placement of Plaintiff in functions or environments in which they would be endangered and abused.

192.    Furthermore, at no time during the periods of time alleged did Defendants DC, Murray, DCJDC, John Does 1-40 and 61-100 and/or ABC Entities 1-10 have in place a system or procedure to supervise and/or monitor DCJDC staff members to ensure that children, including Plaintiff, were not abused.

193.    Moreover, as set forth above, the incidents of abuse in DCJDC were neither isolated nor unusual. For years, Defendants DC, Murray, DCJDC, John Does 1-40 and 61-100 and/or ABC Entities 1-10 failed to reprimand, punish, report, or otherwise sanction DCJDC staff who they knew or had reason to know was a danger to children in the detention center. Defendants' knowing acquiescence and/or reckless disregard and silence with respect to the known, or reasonably knowable, activities of DCJDC staff constituted a course of conduct through which acts of sexual violence, mental torment, and the violation of the sanctity of children were condoned, approved, and effectively authorized.

194.    Through their failure to timely reprimand and sanction the acts referenced above, and for all of the other reasons set forth herein including, without limitation, their failure to take the steps necessary to prevent the occurrence of such reprehensible acts, Defendants DC, Murray, DCJDC, John Does 1-40 and 61-100 and/or ABC Entities 1-10 ratified said actions and, accordingly, are vicariously liable for the actions of their entities and individual employees.

195.    At all relevant times, Defendants failed to adequately and properly:

a.  employ processes that screen out and/or prevent the hiring of predators on their staff;

b.  supervise its agents, employees, servants, staff members at DCJDC, and/or detainees including, Plaintiff, and other individuals that knew or should have known about the staff sexually abusing Plaintiff;

c.  train its agents, employees, servants, staff members at DCJDC, and/or detainees, and other individuals that knew or should have known about the staff sexually abusing Plaintiff;

d.  employ policies that screen out and/or prevent the retention of predators on DCJDC staff; and

e.  investigate staff background and/or information it knew or should have known during the course of their employment including that they were a predator sexually abusing minors.

196.    The negligent, reckless, intentional, outrageous, deliberately and recklessly indifferent and unlawful acts and omissions of Defendants as set forth above and herein, consisted of, *inter alia*:

a.  permitting staff to sexually abuse minors;

b.  permitting staff to engage in illegal sexual conduct with minors on DCJDC's premises;

c.  permitting staff to physically abuse Plaintiff;

d.  permitting and/or allowing an environment in which staff violated or engaged in conduct that would constitute violations of Pennsylvania criminal statutes prohibiting Rape (18 Pa. C.S.A. § 3121), and/or Involuntary Deviate Sexual

Intercourse (18 Pa. C.S.A. § 3123), and/or Sexual Assault (18 Pa. C.S.A. § 3124.1), and/or Institutional Sexual Assault (18 Pa. C.S.A. § 3124.2), and/or Aggravated Indecent Assault (18 Pa. C.S.A. § 3125), and/or Indecent Assault (18 Pa. C.S.A. § 3126), and/or Corruption of Minors (18 Pa. C.S.A. § 6301), and/or Endangering the Welfare of a Child (18 Pa. C.S.A. § 4304), constituting negligence per se;

e.  failing to properly and adequately supervise and discipline its employees to prevent the sexual abuse that occurred to Plaintiff;

f.  failing to adopt, enforce and/or follow adequate policies and procedures for the protection and reasonable supervision of children who were placed at DCJDC, including Plaintiff, and, in the alternative, failing to implement and comply with such procedures which had been adopted;

g.  failing to implement, enforce and/or follow adequate protective and supervisory measures for the protection of minors placed in DCJDC, including Plaintiff;

h.  creating an environment that facilitated sexual abuse by staff at DCJDC;

i.  failing to adopt, enforce and/or follow policies and procedures to protect minors against harmful influence and contact by DCJDC guards and staff;

j.  violation of duties imposed by Restatement (Second) of Torts, §§ 302B, 314, 315, 317, 323, 324A, 343, 344 and 371 and Restatement (Second) of Agency § 213 as adopted in Pennsylvania;

k.  failing to warn Plaintiff of the risk of harm posed by guards and staff after Defendants knew or should have known of such risk;

l.  failing to provide Plaintiff with any assistance in coping with the injuries sustained;

m.  ratifying the staff and guards' conduct;

n.  failing to warn or otherwise make reasonably safe the property which Defendants possessed, supervised and/or controlled, leading to the harm of Plaintiff;

o.  failing to adopt/implement and/or enforce policies and procedures for the reporting to law enforcement, Office of Children and Youth, authorities within Delaware county, and/or other authorities of harmful acts to children;

p.  failing to report staff and guards' harmful acts to authorities,

q.  failing to implement adequate and proper policies regarding sexual abuse and/or harassment by DCJDC staff and/or violating its own policies regarding sexual abuse and/or harassment by DCJDC staff;

r.  violating the requirements of Pennsylvania's Child Protective Services Law, 23 § 6311(a) and (b), constituting negligence per se;

s.   ignoring, concealing, or otherwise mitigating the seriousness of the known danger that DCJDC and its staff posed;

t.  failing to prevent the sexual abuse that was committed by Defendants' staff on Plaintiff;

u.  allowing guards to remain on staff after knowing that they sexually abused minors;

v.  failing to properly supervise and/or discipline DCJDC employees;

w.  failing to adequately and properly train its employees regarding sexual abuse of minors by DCJDC staff and the red flags and/or warning signs of sexual abuse; and

    x.   negligently managing, supervising, licensing, regulating and/or operating DCJDC.

197.    As a proximate and direct result of Defendants' negligence and/or reckless conduct described herein, Plaintiff was harmed as a result and has sustained physical and emotional injuries, embarrassment, mental anguish, pain and suffering and loss of enjoyment of life and life's pleasures.

198.    Plaintiff has been and will likely, into the future, be caused to incur medical expenses and have or may likely incur a loss of earning capacity in the future.

199.    Defendants knew or should have known about the severe risk of their failure to take any appropriate precautions outlined above and acted with a reckless disregard for such risk for which Plaintiff is entitled to and hereby seek punitive damages pursuant to the requirements of Pennsylvania law.

200.    Defendants' actions and failures as described herein are outrageous and were done recklessly with a conscious disregard of the risk of harm to Plaintiff, for which Plaintiff are entitled to and hereby seek punitive damages.

## COUNT II -NEGLIGENCE
### Plaintiff v. Defendant CRGC, John Does 60-100 and ABC Entities 1-10

201.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth hereinafter.

202.    At all relevant times, Defendants CGRC, John Does 60-100 and/or ABC Entities 1-10 owed a duty to ensure that minors were not being sexually abused by staff at DCJDC and a duty to report any known or suspected child abuse.

203.    At all relevant times, Defendants CGRC, John Does 60-100 and/or ABC Entities 1-10 owed a duty not to help cover up child abuse at DCJDC.

204.     At all relevant times, Defendants CGRC, John Does 60-100 and/or ABC Entities 1-10 owed a duty to protect and safeguard Plaintiff from hurt, harm and danger while he was under their supervision at DCJDC.

205.     At all relevant times, Defendants had a duty to ensure that the abuse being committed by DCJDC employees was reported.

206.     At all relevant times, Defendants had a duty to provide for the safety of Plaintiff when it knew, or should have known, Plaintiff was in danger.

207.     At all relevant times, Defendant knew or should have known that agents, employees, servants and/or staff members of DCJDC were sexually abusing Plaintiff and/or other minors at DCJDC and/or posed a risk to sexually abuse Plaintiff.

208.     Defendants knew, had reason to know, or were otherwise on notice of the unlawful conduct of DCJDC and its own staff and who failed to protect the safety of children in DCJDC, including Plaintiff. Defendants failed and further prevented its staff in taking reasonable steps to implement reasonable safeguards to prevent acts of unlawful sexual abuse by the staff at DCJDC. Defendants CGRC, John Does 60-100 and/or ABC Entities 1-10 failed to prevent or avoid placement of Plaintiff in functions or environments in which he would be endangered and abused.

209.     Defendants' knowing acquiescence and silence with respect to the known, or reasonably knowable, activities of DCJDC staff constituted a course of conduct through which acts of sexual violence, mental torment, and the violation of the sanctity of children were condoned, approved, and effectively authorized.

210.     Defendants CGRC, John Does 60-100 and/or ABC Entities 1-10 allowed, condoned and authorized the abuse of minors by telling its staff members not to report the abuse happening

at DCJDC. Defendants further aided in the cover up of the abuse of minors occurring at the detention center so that it may keep its "lucrative contract" with Delaware County.

211.   Through their failure to timely reprimand and sanction the acts referenced above, and for all of the other reasons set forth herein including, without limitation, their failure to take the steps necessary to prevent the occurrence of such reprehensible acts, Defendants ratified said actions and, accordingly, are vicariously liable for the actions of their entities and individual employees.

212.   At all relevant times, Defendants failed to adequately and properly:

a.   employ processes that require its employees to report, screen out and/or prevent the abuse of children by staff;

b.   supervise their agents, employees, servants, staff members, and/or the agents, employees, servants, staff members, and/or agents under their supervision; and

c.   train their agents, employees, servants and/or staff members.

213.   The negligent, reckless, intentional, outrageous, deliberately and recklessly indifferent and unlawful acts and omissions of Defendants as set forth above and herein, consisted of, *inter alia*:

a.   permitting staff to sexually abuse minors;

b.   permitting staff to engage in illegal sexual conduct with minors at DCJDC;

c.   permitting staff to physically abuse Plaintiff;

d.   permitting and/or allowing an environment in which staff violated or engaged in conduct that would constitute violations of Pennsylvania criminal statutes prohibiting Rape (18 Pa. C.S.A. § 3121), and/or Involuntary Deviate Sexual Intercourse (18 Pa. C.S.A. § 3123), and/or Sexual Assault (18 Pa. C.S.A. § 3124.1),

and/or Institutional Sexual Assault (18 Pa. C.S.A. § 3124.2), and/or Aggravated Indecent Assault (18 Pa. C.S.A. § 3125), and/or Indecent Assault (18 Pa. C.S.A. § 3126), and/or Corruption of Minors (18 Pa. C.S.A. § 6301), and/or Endangering the Welfare of a Child (18 Pa. C.S.A. § 4304), constituting negligence per se;

e.  failing to properly and adequately supervise and discipline its employees to prevent the sexual abuse that occurred to Plaintiff;

f.  failing to adopt, enforce and/or follow adequate policies and procedures for the protection and reasonable supervision of children who were under the care and supervision of Defendant, including Plaintiff, and/or failing to implement and comply with such procedures which had been adopted;

g.  failing to implement, enforce and/or follow adequate protective and supervisory measures for the protection of minors under Defendants' care/treatment at DCJDC;

h.  allowing children to be placed in isolation;

i.  creating an environment that facilitated sexual abuse by DCJDC staff;

j.  failing to adopt, enforce and/or follow policies and procedures to protect minors against harmful influence and contact by DCJDC guards and staff;

k.  ratifying the staff and guards' conduct;

l.  failing to adopt/implement and/or enforce policies and procedures for the reporting to law enforcement, Office of Children and Youth, authorities within Defendants' ability, and/or other authorities of harmful acts to children;

m.  failing to report staff and guards harmful acts to authorities;

n.  violating the requirements of Pennsylvania's Child Protective Services Law, 23 § 6311(a) and (b), constituting negligence per se;

o.  ignoring, concealing, or otherwise mitigating the seriousness of the known danger that DCJDC and its staff posed;

p.  failing to prevent the sexual abuse that was committed by DCJDC staff on Plaintiff;

q.  failing to properly supervise and/or discipline its employees; and

r.  failing to adequately and properly train its employees regarding sexual abuse of minors by DCJDC staff and the red flags and/or warning signs of sexual abuse.

214.  As a proximate and direct result of Defendants' negligence and/or reckless conduct described herein, Plaintiff was harmed as a result and has sustained physical and emotional injuries, embarrassment, mental anguish, pain and suffering and loss of enjoyment of life and life's pleasures.

215.  Plaintiff has been and will likely, into the future, be caused to incur medical expenses and has been and may likely incur a loss of earning capacity in the future.

216.  Defendant CGRC, a youth counseling service, John Does 60-100 and/or ABC Entities 1-10, knew or should have known about the severe risk of their failure to take any appropriate precautions outlined above and acted with a reckless disregard for such risk, for which Plaintiff is entitled to and hereby seek punitive damages pursuant to the requirements of Pennsylvania law.

217.  Defendants' actions and failures as described herein are outrageous and were done recklessly with a conscious disregard of the risk of harm to Plaintiff for which Plaintiff is entitled to and hereby seeks punitive damages.

### COUNT III – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### Plaintiff v. DC, DCJDC, MURRAY, CRGC, JOHN DOES 1-40, 60-100 and ABC ENTITIES 1-10

218.  Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

219.     Defendants, DC, DCJDC, Murray. John Does 1-40, 60-100 and ABC Entities 1-10, by and through their contact with Plaintiff, as described above, negligently and/or recklessly committed multiple acts of extreme and outrageous conduct which caused severe emotional, psychological, and psychiatric injuries, distress, and harm to Plaintiff, which also manifested in physical injuries to Plaintiff as set forth above in an extreme, outrageous and harmful manner.

### COUNT IV –INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Plaintiff v. DC, DCJDC, MURRAY, CRGC, JOHN DOES 1-40, 60-100 and ABC ENTITIES 1-10

220.     Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

221.     Defendants, by and through their contact with Plaintiff, as described above intentionally committed multiple acts of extreme and outrageous conduct which caused severe emotional, psychological, and psychiatric injuries, distress, and harm to Plaintiff, which also manifested in physical injuries to Plaintiff as set forth above, in an extreme, outrageous and harmful manner.

### COUNT V -NEGLIGENT FAILURE TO RESCUE
### Plaintiff v. DC, DCJDC, MURRAY, CRGC, JOHN DOES 1-40, 60-100 and ABC ENTITIES 1-10

222.     Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

223.     The negligence and recklessness of Defendants in directly and proximately causing the injuries and damages to Plaintiff, described herein, includes:

    a.   failing to take reasonable and necessary steps to rescue Plaintiff after placing him in a position of harm;

b.  failing to exercise reasonable and necessary steps to prevent further harm after rendering Plaintiff in danger of further harm;

c.  failing to take reasonable and necessary steps to give aid or assistance to Plaintiff after rendering him in danger of further harm;

d.  failing to take reasonable steps to obtain aid or assistance for the Plaintiff after rendering him in danger of further harm;

e.  failing to take reasonable and necessary steps to prevent the delay in the appropriate care of Plaintiff; and

f.  violation of the duties set forth in Restatement (Second) of Torts, Sections 314A & 322, as adopted in Pennsylvania.

224.    As a proximate and direct result of Defendants' breaches described in the preceding paragraph, Plaintiff sustained psychological and physical harms and injuries as described above.

225.    The aforementioned incidents resulted from the negligence, recklessness and/or intentional acts of Defendants and was due in no manner whatsoever to any act or failure to act on part of Plaintiff.

**COUNT VI - FAILURE TO WARN**
**Plaintiff v. DC, DCJDC, MURRAY, CRGC, JOHN DOES 1-40, 60-100 and ABC ENTITIES 1-10**

226.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

227.    At all times material hereto, Defendants owed a duty to Plaintiff and the public to warn about DCJDC and its staff when they knew, or should have known, that the staff and facility posed a risk to all persons and in particular to minors being detained in their juvenile detention center.

228.     Defendants breached their duty to warn that DCJDC staff members, specifically the guards, posed a risk of harm. Defendants failed to exercise the reasonable care, skill, and diligence of an ordinarily prudent county would, in warning minors and the public of the risks posed by their staff.

229.     No negligence on the part of the Plaintiff contributed to the happening of the occurrence.

230.     Plaintiff's injuries and damages as recited herein, occurred directly and were proximately caused by Defendants' breach of duty to warn as described herein.

231.     As a direct and proximate result of Defendants' failure to warn the public and Plaintiff about DCJDC and its staff, Plaintiff suffered serious injury, has required medical care and attention; has suffered mental anguish, severe pain and agony as a result of the happening of the occurrence; and was otherwise injured and damaged, for which claim is made.

## COUNT VII - CIVIL CONSPIRACY
### Plaintiff v. DC, DCJDC, MURRAY, CRGC, JOHN DOES 1-40, 60-100 and ABC ENTITIES 1-10

232.     Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

233.     As outlined above and upon information and belief, Defendants (which is comprised of a network of the above outlined facilities and/or entities) and its employees/agents/staff/administrators/directors knowingly and willfully conspired and agreed among themselves to misrepresent to and conceal from the public, including, but not limited to Plaintiff and his family, incidents and allegations of abuse and exploitation and/or that there was a danger to all of the residents at DCJDC being abused and/or exploited. This conspiracy continued until March of 2021 when DCJDC was finally shut down.

234. The network of entities herein conspired to keep incidents and allegations of abuse and exploitation from the public, including but not limited to Plaintiff, as well as appropriate licensing and law enforcement authorities. Instead of informing the public, Plaintiff, and/or appropriate licensing and law enforcement authorities about instances of abuse and exploitation, Defendants intentionally and falsely told Plaintiff, the public and appropriate licensing and law enforcement authorities that the children in the care of DCJDC were safe, protected and having their basic human needs met.

235. In furtherance of said conspiracy and agreement, Defendants engaged in fraudulent representations, omissions and/or concealment of facts, acts of cover-up and statements. Defendants were purely motivated in this regard for the purposes of protecting their own interests at the expense of innocent children.

236. All of the actions of Defendants set forth in the preceding paragraphs were in violation of the rights of Plaintiff and committed in furtherance of the aforementioned conspiracies and agreements. Moreover, each of the aforementioned individuals lent aid and encouragement, and knowingly financed, ratified and/or adopted the acts of the other. As a proximate result of the wrongful acts herein alleged, Plaintiff has suffered significant damage as outlined above.

237. These acts constituted malicious conduct which was carried on by the network herein referred to as Defendants with willful and conscious disregard for Plaintiff's rights with the intention of willfully concealing incidents of assault, abuse, and exploitation and was despicable conduct by any measure that subjected Plaintiff to cruel and unjust hardship, so as to justify an award of exemplary and punitive damages. Accordingly, punitive damages should be awarded against Defendants to punish them and deter other such persons from committing such wrongful and malicious acts in the future.

### COUNT VIII -NEGLIGENCE *PER SE*
### Plaintiff v. DC, DCJDC, MURRAY, CRGC, JOHN DOES 1-40, 60-100 and ABC ENTITIES 1-10

238.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

239.    Defendants knew, had knowledge or had reasonable suspicion of harmful acts being committed by its staff on minors at DCJDC and negligently, recklessly and/or intentionally violated their statutory duty to report such abuse as required by Pennsylvania's Child Protective Services Law (PCPSL), 23 § 6311(a) and (b) et seq.

240.    Defendants knew, had knowledge or had reasonable suspicion of harmful acts and/or other misconduct being committed by guards on children and/or other minors and negligently, recklessly and/or intentionally violated their statutory duty to report such abuse.

241.    Defendants' violations constitute negligence per se under Pennsylvania law.

242.    Defendants' negligent, reckless and/or intentional failure to report such harmful acts allowed DCJDC staff to sexually abuse Plaintiff, causing continuing harm to Plaintiff and the injuries and damages described above.

243.    Such failure on the part of Defendants was reckless, intentional, knowing, grossly negligent, deliberately and recklessly indifferent, outrageous, malicious and/or was a reckless and conscious disregard for the safety of Plaintiff.

### *Federal Claims*

### COUNT IX – 42 U.S.C. § 1983
### Plaintiff v. DC, DCJDC, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80 and ABC Entities 1-10
### Civil Rights Conspiracy

244.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

245.     The Defendants, acting within the scope of their employment and  under color of state law, agreed among themselves and with other individuals to act in concert in order to deprive Plaintiff, and many others similarly situated, of his clearly established Fourth, Fifth, Eighth, and Fourteenth Amendment rights to be free from unreasonable  searches and seizures, false arrest, false imprisonment, malicious prosecution, deprivation of liberty without due process of law, self-incrimination and to a fair trial.

246.     In furtherance of the conspiracy, Defendants engaged in and facilitated numerous overt acts, including, without limitation, the following:

   a.   Delegating the non-delegable duty to maintain and manage the County's juvenile detention center to the Board of Judges;

   b.   Circumventing the oversight structure, contemplated and codified by the Pennsylvania legislature, and assigning the duty to manage and maintain the juvenile detention facility – all in violation of Pennsylvania law.

   c.   Intentionally or with deliberate indifference failing to comply with their duty to keep juvenile residents of the DCJDC safe from harm;

247.   The acts and omissions by the Defendants, DC, DCJDC, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80 and ABC Entities, 1-10 were made in a willful disregard for the safety of Plaintiff and a reckless or callous indifference for his protected rights.

248.     Defendants' acts and omissions, as described above, were the direct and proximate cause of Minor-Plaintiff's injuries.  Defendants knew, or should have known, that their actions and/or inactions would result in Minor-Plaintiff's grave physical, emotional, psychological and other harm.

### COUNT X - 42 U.S.C. § 1983

**Plaintiff v. DC, DCJDC, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray,
John Does 1-80, and ABC Entities 1-10
Excessive and Unreasonable Force in Violation of the Fourth, Eighth and Fourteenth
Amendments**

249.     Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

250.     The Fourth, Eighth and Fourteenth Amendments to the United States Constitution protect Minor-Plaintiff from sexual and physical abuse and unreasonable or excessive force from DC and DCJDC. These amendments also required Defendants, including Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80 and ABC Entities 1-10 to establish policies and practices to protect Plaintiff from known harms and known patterns of constitutional deprivations.

251.     Defendants failed, with deliberate indifference, to provide a safe custodial setting for Plaintiff, by failing to properly train, supervise and discipline staff at the DCJDC, including the John Doe Defendants, failing to properly investigate claims of child abuse related to residents at DCJDC, and failing to appoint the proper individuals to a board of advisors for adequate, unbiased, and independent management, as required by state law. As a proximate result of Defendants' policies, practices and customs, the staff at DCJDC, including the John Doe Defendants, acting under color of state law, subjected Plaintiff to sexual abuse and excessive and unreasonable force, a failure to protect from harm, and other abuses alleged in this Complaint. Defendants, DC, DCJDC and its staff and Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80 and ABC Entities violated Plaintiff's Fourth, Eighth and Fourteenth Amendment rights when DC/DCJDC staff physically, verbally, sexually and psychologically abused him, and/or endorsed the abusive environment, and/or took no action to prevent such abuse despite their knowledge of prior, reported instances of abuse and the abusive environment festering at DCJDC.

252. The force used in each of these instances was objectively unreasonable, malicious, sadistic, intended to cause harm, and without any legitimate penological purpose.

253. Defendants acted or failed to act under the color of state law, when they were required to keep minors, including Plaintiff, safe from harm.

254. Defendants' acts and omissions as set forth in the preceding paragraphs of this Complaint shock the conscience, deprived Plaintiff of his Fourth, Eighth and Fourteenth Amendment right to be protected from physical, sexual, mental and psychological abuse   and neglect and unreasonable or excessive force, and caused Plaintiff grave physical, emotional, psychological and other harm.

255. The acts and omissions by the Defendants, DC, DCJDC, and Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80 and ABC Entities 1-10 were made in a willful disregard for the safety of Plaintiff and a reckless or callous indifference for his protected rights.

256. The acts and omissions by the Defendants, DC, DCJDC, and Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10 as described in the preceding paragraphs of this Complaint, were the direct and proximate cause of Plaintiff's damages and injuries and are therefore liable to Plaintiff under 42 U.S.C. § 1983 and the Fourth, Eighth and Fourteenth Amendments.

**COUNT XI: 42 U.S.C. §1983**
**Plaintiff v. DC, DCJDC, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray,**
**John Does 1-80, and ABC Entities 1-10**
**Failure to Intervene**

257. Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

258. By their conduct and under color of state law, Defendants, DC, DCJDC, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80,  and ABC Entities 1-

10, had knowledge of the child abuse at DCJDC and had opportunities and responsibilities to intervene and stop the abuse that was occurring to Plaintiff at DCJDC to prevent the violation of her clearly established constitutional right to be free from unreasonable and excessive force and cruel and unusual punishment but, with deliberate indifference, failed to do so.

259.    Defendants', DC, DCJDC, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10, failures to intervene violated Plaintiff's clearly established constitutional right to be free from unreasonable and excessive force and cruel and unusual punishment as guaranteed under the Eighth and Fourteenth Amendments.

260.    The failures of Defendants, DC, DCJDC, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80 and ABC Entities 1-10 were made in a willful disregard for the safety of Plaintiff and a reckless or callous indifference for his protected rights.

261.    Defendants', DC, DCJDC, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80 and ABC Entities 1-10, acts and omissions, as described in the preceding paragraphs of this Complaint, were the direct and proximate cause of Plaintiff's damages and injuries and are therefore liable to him under 42 U.S.C. § 1983.

### COUNT XII: 42 U.S.C. §1983
### Plaintiff v. DC, DCJDC, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, ABC Entities 1-10
### Deprivation of Rights by Virtue of State Created Danger

262.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

263.    As set forth herein, this is a civil rights action brought pursuant to 42 U.S.C. § 1983 that challenges the constitutionality of the actions by Defendants, DC, DCJDC, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10, that resulted in severe injuries to Plaintiff.

264.    At all times relevant hereto, Defendants, DC, DCJDC, Teresa D. Miller, Theodore

Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10, were all "persons" pursuant to 42 U.S.C. §1983 as all were providing care, custody and/or control over Plaintiff.

265.    The specific harms to which Defendants, DC, DCJDC, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10, exposed Plaintiff were foreseeable and direct in that they knew that allowing continuous and regular abuse to occur to Plaintiff and other children at DCJDC would result in severe and lasting harm to Plaintiff.

266.    At all times material hereto, Defendants, DC, DCJDC, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10, were bound, as previously set forth herein, by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution as well, upon information and belief, their own policies, rules and regulations for the management, care and oversight of children placed in juvenile detention facilities in Pennsylvania, and specifically the DCJDC.

267.    In direct contravention and violation of the Fourth, Eighth and Fourteenth Amendments as set forth above and, upon information and belief, in violation of their own policies and regulations, Defendants, DC, DCJDC, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10, recklessly, willfully and with deliberate indifference, physically, verbally and psychologically abused Plaintiff.

268.    At all times relevant hereto, Defendants, DC, DCJDC, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10, were acting under "color of state law" for purposes of 42 U.S.C. § 1983 by placing Plaintiff in the Delaware County Juvenile Detention Center.

269.    Defendants, DC, DCJDC, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80,  and ABC Entities 1-10, while acting under color of state law, unlawfully, and/or unreasonably, willfully, recklessly, maliciously and/or with deliberate indifference to Plaintiff's rights, violated 42 U.S.C. §1983 and deprived Plaintiff of his rights as

guaranteed under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, similar provisions of the Pennsylvania Constitution, Federal Law, State Law, and/or local law in that these Defendants, without lawful basis, caused the aforementioned injuries and damages to Plaintiff by creating the danger to which Plaintiff was exposed, in violation of his aforesaid guaranteed rights, as set forth in the preceding paragraphs of this Complaint.

270.    The danger created by Defendants, DC, DCJDC, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10, as set forth above, was foreseeable and direct.

271.    Through its failures, acts and omissions as set forth above, Defendants, DC, DCJDC, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10, created a degree of culpability that shocks the conscience.

272.    In creating the danger as set forth above, Defendants, DC, DCJDC, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10, acted in a willful disregard for the safety of Plaintiff and a reckless or callous indifference for his protected rights.

273.    As the facts set forth in this Complaint demonstrate, Defendants, DC, DCJDC, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10, knew or should have known that DCJDC was abusing minors, including Plaintiff, and that by failing to take action to stop such abuses, Plaintiff was exposed to serious harm and established a deliberate indifference on their behalf towards him.

274.    Defendants', DC, DCJDC, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10, acts and omissions, as described in the preceding paragraphs of this Complaint, were the direct and proximate cause of Plaintiff's damages and injuries and are therefore liable to her under 42 U.S.C. § 1983.

**COUNT XIII: 42 U.S.C. §1983**

**Plaintiff v. DC, DCJDC, Teresa D. Miller, Theodore Dallas, Cathy Utz, Mark A. Murray, John Does 1-80, and ABC Entities 1-10**
**Deprivation of Rights by Virtue of a Special Relationship**

275.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

276.    As set forth herein, this is a civil rights action brought pursuant to 42 U.S.C. § 1983 that challenges the constitutionality of the actions by Defendants that resulted in severe injuries to Plaintiff.

277.    At all times relevant hereto, Defendants were all "persons" and were acting under "color of state law" pursuant to 42 U.S.C. §1983 by providing care, custody and/or control over Plaintiff either directly, by delegated authority or via contractual authority.

278.    The specific harms to which Defendants exposed Plaintiff were foreseeable and direct in that they knew that allowing continued child abuse within the DCJDC would result in severe and lasting harm to Plaintiff.

279.    At all times material hereto, Defendants were bound by various Pennsylvania statutes as well as, upon information and belief, its own policies, rules and regulations for the management of juveniles placed in their care.

280.    In direct contravention and in violation of those Pennsylvania statutes and upon information and belief, in violation of Defendants' own rules, regulations, and policies, Defendants recklessly and willfully subjected Plaintiff to physical and psychological harms and death, described herein, even though such harms were foreseeable.

281.    At all times material hereto and upon information and belief, Defendants violated their own rules, regulations and policies for the management and supervision of individuals placed in their custody.

282.     At all times relevant hereto, a "special relationship" existed between Defendants and Plaintiff.

283.     Upon information and belief, a "special relationship" existed between Plaintiff and the aforesaid Defendants for purposes of 42 U.S.C. § 1983, as Plaintiff was placed in their care as a juvenile and that care was custodial in nature and resulted in the deprivation of Plaintiff's safety and liberty.

284.     Defendants, while acting under color of state law, unlawfully, and/or intentionally, unreasonably, willfully, maliciously, and/or with deliberate and/or reckless indifference to the Plaintiff's rights, violated 42 U.S.C. § 1983 and deprived Plaintiff of his rights as guaranteed under the Fourth, Eighth, and/or Fourteenth Amendments to the United States Constitution, similar provisions of the Pennsylvania Constitution, Federal Law, State Law, and/or local law in that these Defendants without lawful basis caused the aforementioned injuries and damages to Plaintiff as described in this Civil Action Complaint, in violation of the aforesaid guaranteed rights as follows and upon information and belief:

        a.    failing to take reasonable and necessary steps to rescue Plaintiff after placing him in a position of harm;

        b.    failing to exercise reasonable and necessary steps to prevent harm despite knowing that Plaintiff was in danger;

        c.    failing to take reasonable and necessary steps to give aid to Plaintiff or to intervene t to prevent further harm;

        d.    Such other deliberately indifferent, reckless, and willful and wonton conduct resulting in the violation of Plaintiff's rights that shall be revealed through discovery prior to trial.

285.     Defendants' aforesaid conduct, initiated under color of state law, unlawfully,

and/or intentionally, unreasonably, willfully, maliciously, and/or with deliberate and/or reckless indifference violated 42 U.S.C. § 1983 and deprived Plaintiff of his rights as guaranteed under the Fourth, Eighth, and/or Fourteenth Amendments to U.S. Constitution, similar provisions of the Pennsylvania Constitution, Federal Law, State Law, and/or local law without lawful basis, thus causing injuries and damages to Plaintiff as aforesaid.

<u>**COUNT XIV: 42 U.S.C. §1983**</u>
<u>**Plaintiff v. DC, DCJDC and ABC Entities 1-10**</u>
<u>**Municipal Liability Claim**</u>

286.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

287.    Defendants, DC, DCJDC and ABC Entities 1-10, by and through their final policymakers, had in force and effect during the time of the abuse that occurred to Plaintiff and other children, and for many years preceding these abuses coming publicly to light, a policy, practice or custom of unconstitutional misconduct in the care, custody, supervision and/or control of minors that were placed in the Defendant's, Delaware County, juvenile detention center at Lima.  Such unconstitutional misconduct includes the acts and abuses that are described in the preceding paragraphs of this Complaint.

288.    Defendants, DC, DCJDC and ABC Entities 1-10, had actual or constructive notice of these policies, practices and customs, but repeatedly failed to make any meaningful investigation into the complaints that were raised about DCJDC and failed to take appropriate remedial and/or disciplinary actions to curb this pattern of misconduct.

289.    Such unconstitutional municipal customs, practices and/or policies were the moving force behind the abuse that occurred to Plaintiff and the injuries and damages he sustained as a result.

290.    Defendants, DC, DCJDC and ABC Entities 1-10, also failed, with deliberate

indifference, to provide a safe custodial setting for Plaintiff, by failing to properly train, supervise and discipline staff at DCJDC, including the John Doe Defendants. As a direct and proximate result of Defendants' failure to train, supervise, monitor, discipline, oversee and control the staff at DCJDC, including the John Doe Defendants, Plaintiff was subjected to excessive and unreasonable force, a failure to protect from harm, and other abuses as set forth in this Complaint. Defendants, DC, DCJDC and ABC Entities 1-10, violated Plaintiff's Fourth, Eighth and Fourteenth Amendment rights when they physically, verbally, sexually and psychologically abused her and/or took no action to prevent such abuse despite their knowledge and being on notice of what was occurring at DCJDC.

291.    Defendants, DC, DCJDC, and ABC Entities 1-10, acted in a willful disregard for the safety of Plaintiff and a reckless or callous indifference for his protected rights.

292.    Defendants', DC, DCJDC, and ABC Entities 1-10, acts and omissions, as described in the preceding paragraphs of this Complaint, were the direct and proximate cause of Plaintiff's damages and injuries and are therefore liable to him.

## **PRAYER FOR RELIEF**

**WHEREFORE,** in consideration of the above claims, Plaintiff, S.J., requests that a jury be selected to hear this case and render a verdict for the Plaintiff, and against the Defendants, and that the jury selected award damages to the Plaintiff in an amount which will effectively prevent other similarly caused acts and adequately reflects the enormity of the Defendants' wrong and injuries to the Plaintiff due to the Defendants' conduct, including but not limited to:

       a.    All available compensatory damages for the described losses with respect to each cause of action;

     b.     Past and future medical expenses, as well as the costs associated with past and future life care;

     c.     Past and future lost wages and loss of earning capacity;

     d.     Past and future emotional distress;

     e.     Consequential and/or special damages;

     f.     All available non-economic damages, including without limitation pain, suffering, and loss of enjoyment of life;

     g.     Punitive damages with respect to each cause of action where allowed;

     h.     Reasonable and recoverable attorney's fees;

     i.     Costs of this action; and

     j.     Pre-judgment and all other interest recoverable.

Further, Plaintiff requests that the Court enter judgment consistent with the jury's verdict and prays for any other damages and equitable relief the Court or jury deems appropriate under the circumstances.

**LAFFEY, BUCCI, D'ANDREA, REICH & RYAN, LLP**

*/s/ Guy D'Andrea*
Gaetano (Guy) D'Andrea #208905
Michael J. McFarland #322771
Ragha Narasimhan #329761
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107
(T): (215) 399-9255
(E): cvgdteam@laffeybucci.com
*Attorneys for Plaintiff S.J.*

Dated: October 15, 2024